UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MENACHEM PRI-HAR,
    Petitioner,

-vs-

JANET RENO, Attorney General,
CHARLES W. ZEMSKI, Acting
District Director,
    Respondents.

Civil No. 1:CV-00-1635
(Judge Caldwell)

**FILED**
HARRISBURG, PA

FEB 1 2001

MARY E. D'ANDREA, CLERK
Per _____
    Deputy Clerk

### REPLY TO RESPONSE IN SHOW CAUSE ORDER

On December, 14, 2000, Respondents submitted their response to a show cause order concerning dismissal of a final administrative removal order and allowing Petitioner to pursue discretionary waivers prior to the Anti-terrorism and Effective Death Penalty Act ("AEDPA") and Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). According to the response, Petitioner is not entitled to discretionary waivers pursuant to the Immigration and Nationality Act ("INA") Sections 212 (c) or (h).

For the reasons stated below respondents had erred in their contentions and therefore a writ of habeas corpus should be granted.

1

## ISSUE NO. I

First, Petitioner asserted that his deportation proceeding was pending at the time the AEDPA or IIRIRA was enacted. Thus, the reliance of the Respondents on these acts to deny him access to a discretionary relief under INA §212 (c) or (h) has a retroactive effect. Respondents conceded that a pending deportation preceeding prior to the acts entitles a convicted alien to the relief of §212 (c) or (h) (Response at 7-8), but they argued that the deportation proceeding against Petitioner was not pending prior to the enactment of the statutes. (Response at 10).

Petitioner presented a detainer issued on August 1, 1994 by the Immigration and Naturalization Service ("INS") as evidence to the pendency of his deportation proceedings at the time the new statutes were enacted. Respondents rebutted this evidence with the argument that the detainer did not place the Petitioner in deportation proceedings and that the proceedings were commenced on May 8, 2000, upon the issuance of The Notice of Intent to Issue a Final Administrative Removal Order. (Response at 9-10).

The pivotal question here, therefore, is whether the deportation proceedings against petitioner was pending upon the issuance of the detainer or upon the service of the Notice of Intent.

According to respondents, the detainer was an informative instrument concerning inquiry into possible deportation and it did not place Petitioner under INS custody or

2

authority. As a result, they argued, the detainer had not affected Petitioner and, thus, his removal proceeding was not pending upon the enactment of the acronymous AEDPA and IIRIRA statutes. (Response at 10).

The INS regulations, however, contradict this explanation. Pursuant to the Regulations "[a] detainer serves to advise another law enforcement agency that the Service seeks custody of an alien presently in the custody of that agency for the purpose of arresting and **removing** the alien. The detainer is a request that such agency advise the Service, prior to release of the alien, in order for the Service to arrange to assume custody." 8 C.F.R. §287.7. Accordingly, the purpose of the detainer in this case was to remove Petitioner from the United States.

Indeed a clause in the detainer corroborates the federal regulations. The detainer was addressed to the federal warden and requested that petitioner be "immediately transferred to FCI, Oakdale[1], Louisiana when he is designated to OAK INS." (Petition's Ex. 1). The requested transfer of Petitioner to INS custody shows that the INS had already made final determination as to subjecting him to deportation proceeding by virtue of the requested transfer and, therefore, lodged the detainer.

The Statute then is also clear as to when Petitioner's deportation proceeding have been commenced. It states:

---

[1] FCI Oakdale in Louisiana is an INS deportation facility. See Henderson v. I.N.S., 157 F.3d 106, 127 (2nd Cir. 1998).

3

> In the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of the conviction.

8 U.S.C. § 1252 (i) (repeal)

It is the spirit of the law then that mandates the commencement of Petitioner's deportation Proceedings upon his conviction.[2] Pursuant to this law the INS lodged its detainer and therefore made Petitioner deportation proceedings constructively pending since then.

Furthermore, It would be undisputed here that the INS has the sole authority to place Petitioner under deportation proceedings. Therefore, "the pendency question should be construed in favor of the potential deportee and against the INS." Bury v. Reno, 101 F.Supp. 2d 296, 300 (E.D. Pa 2000). From a due process standpoint, fairness dictates that the INS should have not lodged a detainer in 1994, subjecting Petitioner to deportation proceeding based on the law that was existed then and thereafter dormant the proceeding for six years until issued its Notice of Intent based on favorable intervening law. Construing the six year delay against the INS points to the pendency of the deportation proceeding by virtue of the detainer, because Petitioner should not be penalized for the INS failure to act in an efficient manner.[3] See Bury, *supra* (construing

---

[2] Section 1252 (i) was originally enacted by the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 (1986). In 1996, Congress revised the nation's immigration laws by enacting the IIRIRA. This act redesignated 8 U.S.C. § 1252 (i) as 8 U.S.C. § 1228, and amended it. See 8 U.S.C. § 1228 (a)(3). Then, Congress enacted the Omnibus Consolidated Appropriations Act of 1997 which remodified and amended the IIRIRA now to read as 8 U.S.C. § 1231 (a)(4).

[3] In their response, Respondents do not provide any explanation why they needed six years after commencing the detainer to issue a notice of intent for deportation, especially when the statute at that time required expedited removal proceedings. See 8 U.S.C. § 1252 (i).

4

pendency of deportation against the INS due to its administrative ineffectiveness and purposeful delay); Canela v. U.S. Dept. of Justice, 64 F.Supp. 2d 456, 457-58 (E.D. Pa 1999) (same).

Finally, "[c]oncerns about fair warning, reasonable expectations, and justified reliance" are essential in evaluating whether Petitioner is subjected to the new enacted statutes which Respondents relied upon. Wallace v. Reno, 194 F. 3d 279, 286 (1st Cir. 1999); Bury, 101 F.Supp 2d at 299. Respondents argued that Petitioner did not rely then on the detainer as the initiation of his removal proceedings because his 1995 letter to the INS complaint on the failure to commence deportation. (Response at 10-11).

Respondents overlooked what would have made a reasonable expectation and justified reliance by a convicted alien. After petitioner received the detainer request he looked at the law that then existed and learned that deportation proceedings must be commenced "as expeditiously as possible after the date of conviction." 8 U.S.C. § 1252 (i). Consequently, petitioner reasonably viewed the detainer as the starting point of his deportation proceedings and therefore he had asked in his 1995 letter for the INS conclusion on his deportation status in order to apply for the then available discretionary waiver under the INA Sections 212(c) or (h). The lodging of the detainer gave rise to petitioner's reasonable expectation and reliance that deportation proceeding had began.

The INS own regulations evince that Petitioner's deportation proceedings began upon the issuance of the detainer. *See* 8 C.F.R. § 287.7. The detainer further placed Petitioner under INS authority because it conditioned Petitioner's release from the custody of the Bureau of Prisons upon the INS proceedings in its Oakdale deportation facility. (Petition's Ex. 1). Therefore, "fairness requires that the INS having placed [the Petitioner] under its authority, should also live with the results of that decision". Mercado-Amador v. Reno, 47 F.Supp 2d 1219, 1224 (D. Or. 1999); *See also* Alanis-Bustamante v. Reno, 201 F.3d 1303, 1310 (11th Cir. 2000) (fairness principles dictate that removal proceeding began upon the commencement of a detainer contemporaneously with show cause order).

## ISSUE NO. II

The second raised issue is whether AEDPA / IIRIRA's bar to discretionary relief can be applied to criminal conduct which occurred prior to the enactment of those laws. Respondents, relied on the Third Circuit holding in DeSousa v. Reno, 190 F.3d 175, 187 (3rd Cir. 1999), to contravene this assertion. (Response at 6-7).

Although the Third Circuit holdings in DeSousa is adversed to Petitioner's position, in the Second Circuit, however, the case laws support him. *See* St. Cyr v. I.N.S., 229 F.3d 406, 421 (2nd Cir. 2000); Maria v. McElroy, 68 F.Supp. 2d 206, 230 (E.D.N.Y. 1999); Pena-Rosario v. Reno, 83 F.Supp. 2d 349, 365-66 (E.D.N.Y. 2000);

6

Santos-Gonzalez v. Reno, 93 F.Supp 2d 286, 294 (E.D.N.Y. 2000). Because Petitioner's purported criminal conducts[4] occurred, tried and sentenced in New York (see Pri-Har v. United States, 83 F.Supp. 2d 393), the rule of law in the Second Circuit should apply here.

WHEREFORE, Petitioner respectfully requests that the administrative removal order be vacated and he will be permitted to pursue discretionary waiver from deportation under INA § 212 (c) or § 212 (h).

Dated:   Fort Dix, New Jersey
         January 30, 2001

Respectfully Submitted,

Menachem Pri-Har, *pro se*
#34446-054
FCI Fort Dix
P.O. Box 2000
Fort Dix, N.J. 08640

---

[4] Currently, Petitioner's conviction is being reevaluated by the United States Court of Appeals for the Second Circuit in criminal appeal Docket No. 00-1573.

7

# CERTIFICATE OF SERVICE

MENACHEM PRI-HAR, the Petitioner in this action, hereby certify that a true and correct copy of the within reply to response in show cause order was served by first class mail upon:

> AUSA Dulce Donovan, Esq.
> U.S. Attorney's office
> 228 Walnut Street
> Harrisburg, PA 17108

Dated: Fort Dix, New Jersey
January 30, 2001

_____
Menachem Pri-Har