ORIGINAL

I to PRSCL P.T

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

M. D'ANDREA, CLER
Deputy Clerk

```
-------------------------------------------------x
MENACHEM PRI-HAR,                                 x
                    Petitioner,                   x
                                                  x
                                                  x
          -vs-                                    x    Civil Action No.  1: CV-00-1635
                                                  x
JANET RENO, Attorney                              x
General of the United States, and                 x    (Judge William W. Caldwell)
CHARLES W. ZEMSKI, Acting                         x
District Director,                                x
                    Respondents.                  x
-------------------------------------------------x
```

## PETITIONER'S MOTION FOR A JUDGEMENT
## DIRECTING SPECIFIC ACTS

As an antidote to the Respondents' refusal to comply with the Court's Order,

Petitioner, Menachem Pri-Har (hereinafter "Petitioner"), acting *pro se*, respectfully

moves this Court pursuant to its authority by the virtue of Rule 70 of the rules governing

civil actions[1], for a judgment by which an impartial suitable person would execute the

Order  filed on June 5, 2001, and evaluate an application  for a waiver of ineligibility or

admission under 8 U.S.C. § 1182 (h), INA § 212 (h).  The reasons to grant this motion

are as follows:

_____

1.  In its pertinent part, Rule 70 states:

> If a judgement directs a party ... to perform any other specific
> act and the party fails to comply... the court may direct the act
> to be done at the cost of the disobedient party by some other

(1)  On June 5, 2001, the Court issued a Memorandum and Order by which, *inter alia*, the INS[2] was directed to "entertain a request by Petitioner for a waiver of ineligibility or admission under 8 U.S.C. § 1182 (h), INA § 212 (h)."  (The Memorandum and Order is attached herewith as Exhibit "A").  The Order alloted 30 days for Petitioner to file the  § 212 (h) request.  (*See id.*)

(2)  Following Petitioner's motion, on July 5, 2001, the Court amended the Order to say that "the thirty-day deadline is vacated and that Petitioner shall not be subject to any deadline by this court for seeking such [§ 212 (h)] waiver".  (The amended Order is attached herewith as Exhibit "B").

(3)  On July 21, 2003, Petitioner forwarded his  § 212 (h) application to the INS and to the U.S. attorney who represented the Respondents in the instant action.  (The cover letters to Charles W. Zemski and Martin C. Carlson together with the § 212 (h) application are attached herewith as Exhibit "C").

(4)  The § 212 (h) application sparked correspondence between AUSA Daryl F. Bloom and Petitioner in which on September 29, 2003, Mr. Bloom determined that despite of the Order, Petitioner is ineligible for a consideration under § 212 (h) waiver since the administrative removal proceeding was conducted under the INA § 238 (b), 8

---

person appointed by the court and the act when so done has like effect as if done by the party ...  The court may also in proper cases adjudge the party in contempt.

Fed. R. Civ. P. 70

2.  The INS name has been changed to Immigration and Customs Enforcement ("ICE"). For the purpose of this motion the old acronym has been used.

U.S. C. § 1228 (b), whose provision has barred the Petitioner's eligibility for any waiver from removal.[3]  Mr. Bloom portraited his determination as consistent with the Court's judgement, reading the Memorandum as conditional upon prior decision of the INS on the waiver and reading the Order as none binding under § 238 (b) (5).  (The correspondence which includes Petitioner's letters dated July 21, August 4, September 10 and October 21, 2003, together with Mr. Bloom's letters dated July 28 and September 29, 2003, all in sequence of dates are attached herewith as Exhibit "D").

(5)  Mr. Bloom's determination not to allow the § 212 (h) consideration is in defiance to the Order in which, unequivocally and unconditionally, the INS was directed to "entertain a request by Petitioner for a waiver of ineligibility or admission under 8 U.S.C. § 1182 (h), INA § 212 (h)."  (Ex. A).

(6)  What is more pernicious in Mr.  Bloom's determination is the knowledge that *the law of the case doctrine* is applicable here because neither Respondents nor the INS appeal  from the Memorandum and both Orders.[4]

---

3.  INA § 238(b) (5) states that "[n]o alien convicted of an aggravated felony shall be eligible for any relief from removal that the Attorney General may grant in the Attorney General's discretion."  8 U.S.C. § 1228 (b) (5).

4.  Respondents did not even raise the § 238 (b) (5) argument in their response to the show cause order.  Furthermore, contrary to Mr. Bloom's facet on the Order, in their response to Petitioner's motion to amend the order Respondents had "no opposition to Petitioner being allowed an additional five months to file a § 212 (h) waiver."  (The Response, dated June 25, 2001, is attached herewith as Exhibit "E").

Mr. Bloom repeatedly mention in his letters the filing of the 212 (h) application two years after the Order's date.  The amended Order, however, eliminated the deadline for the filing of the application.  (*See Ex. B*).  In the correspondence, Petitioner explained that it had taken a prolong process in collecting necessary material for the application.  And, Mr. Bloom did not cite any prejudice effect on the INS from entertaining the application now.

(7)  Rule 70 becomes "operative only when a party refuses to comply with judgement." McCabe v. Arave, 827 F. 2d 634, 639 (9th Cir. 1987)

(8)  Mr. Bloom's letter of September 29, 2003, establishes the INS refusal to comply with the Order to entertain Petitioner's application for a § 212 (h) waiver.

(9)  Pursuant to Rule 70 it is requested that the Court itself, or, in the alternative, an impartial suitable person appointed by the Court, assess the § 212 (h) application and determine whether the waiver should be granted.  This assessment be considered as done by the INS.

(10)  It is further requested that the INS refusal to obey the Order shall be sanction with a civil contempt.

**WHEREFORE**, it is submitted that the INS refusal to comply with the Court's Order justifies the requested Rule 70 correction.


Dated: McRae, Georgia
        December 1, 2003

                                        Respectfully submitted,


                                        MENACHEM   PRI-HAR, *pro se*
                                        #34446-054
                                        McRae  C.F.
                                        1000 Jim Hammock Dr.
                                        McRae, GA  31055

Exh A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MENACHEM PRI-HAR,                    :
      Petitioner

                                 :

      vs.                    :    CIVIL ACTION NO. 1:CV-00-1635

JANET RENO, Attorney General        :
of the United States,
CHARLES W. ZEMSKI,                  :
Acting District Director,
      Respondents                 :

**FILED**
HARRISBURG, PA

JUN 05 2001

MARY E. D'ANDREA, CLERK
Per_____
          Deputy Clerk

M E M O R A N D U M

I.    Introduction.

      Petitioner, Menace Pri-Har, a citizen of Israel, has

filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241, challenging a final order of removal the INS obtained

against him based on his fraud conviction in federal court.  The

petition asserts that the agency should have considered his

request for a waiver of deportation under now-repealed INA §

212(c).  It also requests agency consideration of waiver of

deportation under INA § 212(h).[1]

      Pri-Har recognizes that section 212(c) is no longer good

law, having been repealed in 1996 by "IIRIRA,"[2] but argues that

---

    [1]We have subject-matter jurisdiction over this habeas corpus
petition.  See Xu Cheng Liang v. INS, 206 F.3d 308, 317, 321 (3d
Cir. 2000).

    [2]The Illegal Immigration Reform and Immigrant Responsibility
Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 (1996).

the section still applies to him because removal proceedings were pending against him before IIRIRA by virtue of an INS detainer lodged against him in 1994. Alternatively, he argues that application of IIRIRA to him is impermissibly retroactive because his criminal conduct occurred before the effective date of the statute. For the reasons which follow, we will deny the petition.

II.  <u>Background</u>.

Pri-Har lawfully entered the United States in March 1993. According to Respondent, he did so as a "nonimmigrant." According to Petitioner, he entered by way of "a special business visa," and has been coming to the United States since 1983. (Petition at p. 6 n.2). He has never been a permanent resident alien.

In October 1993, he was indicted in the United States District Court for the Southern District of New York on twenty-four counts of defrauding the United States Department of Agriculture. A jury found him guilty on all counts and he was sentenced to 168 months (fourteen years) imprisonment.

On August 1, 1994, the INS issued a detainer against the Petitioner. (Pet'r Ex. 1). The detainer notified the Bureau of Prisons, specifically the warden at FCI-Oakdale, Louisiana, where Pri-Har happened to be serving his federal sentence at the time, that the INS had begun an "[i]nvestigation . . . to determine whether this inmate is subject to deportation from the United

2

States."  The detainer also stated that it was "for notification purposes only" and was not to affect Petitioner's treatment in prison such as classification or work assignments.  It requested that he be "immediately transferred to FCI, Oakdale, Louisiana, when he is designated to OAK INS."

On April 30, 1995, then incarcerated at FCI-Loretto, Loretto, Pennsylvania, Pri-Har wrote the INS, "demanding an immediate hearing in order to determine whether I am subject to deportation from the United States."  The letter mentioned the Attorney General's duty under 8 U.S.C. § 1252(i)(repealed) to begin deportation proceedings as expeditiously as possible for an alien convicted of a deportable offense.  It also complained that the detainer had affected his classification, making him ineligible for minimum security institutions.

On July 3, 1995, he wrote again.  The INS apparently did not respond.

At the time of Pri-Har's conviction and when the detainer was on file, section 212(c) gave the Attorney General discretion to waive exclusion for certain lawfully admitted aliens who had traveled outside the United States and sought re-entry.[3]

_____

[3]In pertinent part, Section 212(c) provided:
Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General. . . . The first sentence of this subsection shall not apply to an alien who has been convicted of

3

Although the statutory language referred only to excludable aliens, section 212(c) had also been applied to deportable aliens.[4]  See DeSousa v. Reno, 190 F.3d 175, 178-79 (3d Cir. 1999) (citing in part, Katsis v. INS, 997 F.2d 1067, 1070 (3d Cir. 1993)).

On April 27, 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA").  Section 440(d) of the AEDPA amended section 212(c) so that a deportable alien convicted of an aggravated felony or of two crimes of moral turpitude could not obtain a section 212(c) waiver, regardless of the prison sentence served.  See DeSousa, supra, 190 F.3d at 179.[5]

---

one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (repealed 1996).

[4]An "excludable" alien was so named because an alien attempting to enter the country was subject under the immigration laws to an exclusion hearing.  A "deportable" alien was an alien already in the country and subject to a deportation hearing.  See Catney v. INS, 178 F.3d 190, 193 n.4 (3d Cir. 1999).  IIRIRA eliminated the distinction between the two hearings and replaced them with a single proceeding – removal.  Id.

[5]With the section 440(d) amendment, the last sentence of section 212(c) read, in pertinent part, as follows:

This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i).

4

After this amendment, IIRIRA § 304(b) repealed section 212(c) in its entirety, effective April 1, 1997, precluding discretionary waiver.  In its place, 8 U.S.C. § 1229b, INA § 240A, now provides for cancellation of removal by the Attorney General, authorizing him to cancel removal for one who has been a permanent resident for five years, lived continuously in the United States for seven years, and who has not been convicted of an aggravated felony.

The IIRIRA also amended section 212(h).  Section 212(h), in pertinent part, allows the Attorney General to grant a waiver of removal where the "immigrant . . . is the spouse, parent, son, or daughter of a citizen of the United States . . . [and] the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien[.]"  8 U.S.C. § 1182(h)(1)(B), INA § 212(h).  IIRIRA section 348(a) amended section 212(h) by adding the following language:

> No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

5

8 U.S.C. § 1182(h), INA § 212(h).

About four years after these amendments, on May 5, 2000, the INS wrote Pri-Har a letter stating that it had determined he should be removed from the United States but that removal would not occur until after he had completed his federal sentence.

A few days later, on May 8, 2000, the INS sent the Petitioner a "Notice of Intent" to issue a final administrative order of removal on the ground that his federal fraud conviction was an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), INA § 237(a)(2)(A)(iii) as defined in 8 U.S.C. § 1101(a)(43)(M) and (U), INA § 101(a)(43)(M) and (U). (Pet'r Ex. 3). The Notice was served on May 11, 2000. On August 10, 2000, the acting district director, as the deciding service officer, issued the removal order based on this ground.[6] (Pet'r Ex. 4).

In so doing, the INS official rejected Petitioner's request to pursue a section 212(c) waiver of deportation because section 212(c) had been repealed effective April 1, 1997, and his removal proceedings had not commenced until May 11, 2000, the date he was served with the Notice of intent to remove.

---

[6]The INS used the removal procedures authorized by 8 U.S.C. § 1228(b), INA § 238(b), because Pri-Har was not a permanent resident.

6

III.   <u>Discussion</u>

    A.   <u>Petitioner Is Not Eligible For a Section</u>
        <u>212(c) Waiver Because the Detainer Did</u>
        <u>Not Commence the INS Case Against Him</u>.

Petitioner maintains that the detainer the INS lodged against him on August 1, 1994, commenced the INS proceedings against him.  He thus argues that he is eligible for a section 212(c) waiver because his case was pending before IIRIRA section 304(b) repealed section 212(c).  He cites in support <u>Sandoval v. Reno</u>, 166 F.3d 225 (3d Cir. 1999), where the Third Circuit held that AEDPA section 404(d)'s amendment of section 212(c) did not apply to pending INS proceedings, thereby allowing the alien in that case (whose case had started before the amendment) to seek a section 212(c) waiver.

In opposition, the Respondents argue that the detainer did not commence proceedings against Pri-Har.  The proceedings commenced only on May 8, 2000, when the Notice of Intent to issue a final administrative removal order was issued.  Since this occurred after IIRIRA section 304(b) repealed section 212(c), the Petitioner cannot seek a section 212(c) waiver.

In support of his position, Petitioner makes several arguments.  First, because the INS controls the deportation process, "the pendency question should be construed in favor of the potential deportee and against the INS." <u>Bury v. Reno</u>, 101 F. Supp. 2d 296, 300 (E.D. Pa. 2000).  Second, Petitioner relies on an INS regulation which provides:

7

> A detainer serves to advise another law
> enforcement agency that the Service seeks
> custody of an alien presently in the custody
> of that agency, for the purpose of arresting
> and removing the alien.  The detainer is a
> request that such agency advise the Service,
> prior to release of the alien, in order for
> the Service to arrange to assume custody, in
> situations when gaining immediate physical
> custody is either impracticable or impossible.

8 C.F.R. § 287.7.  Petitioner concludes from this regulation that

the detainer's purpose was to remove him from the United States

and hence started the INS proceedings.  Third, Pri-Har argues that

the detainer itself supports his position by stating that he

should be "immediately transferred to FCI, Oakdale, Louisiana when

he is designated to OAK INS."  In his view, this establishes that

the INS at that time had decided to deport him.  Finally, he

argues that an alien subject to removal would have perceived the

detainer as starting the removal proceedings.

In support of their position, the Respondents argue as

follows.  First, an INS regulation specifically provides when

removal proceedings commence.  Under 8 C.F.R. § 239.1(a), they

commence not with the lodging of a detainer at the prison where

the immigrant is incarcerated but with "the filing of a notice to

appear with the Immigration Court."  Respondents argue that we

must defer to this regulation under Chevron U.S.A., Inc. v.

Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct.

2778, 81 L.Ed.2d 694 (1984), although they concede that courts

have not always been receptive to deferring to the INS's

8

administrative expertise on this issue, citing <u>Sciglitano v. Holmes</u>, 2000 WL 675696 (E.D. Pa.).

Second, Respondents argue that the detainer only had the effect of notifying the prison that the INS was investigating Pri-Har's removability; indeed, the detainer said as much.  In their view, it "did not give the INS authority to arrest him, and did not subject him to INS authority."  (Opposing brief at p. 10).

<u>Sandoval</u> does not assist us on this issue; it did not discuss when INS proceedings commenced.  As Respondents point out, however, other cases have addressed the issue of when an INS removal proceeding commences in circumstances similar to the instant one -- where after passage of the AEDPA, the INS is attempting to remove an alien who has committed an aggravated felony and the alien seeks a section 212(c) waiver, claiming that the proceedings had started before the AEDPA's passage.  All of these cases have refused to rely on INS regulations specifying when a proceeding commences.  Most of them have preferred instead to look to the reasonable reliance or settled expectation of the alien as to when the proceedings commenced, <u>see</u> <u>Wallace v. Reno</u>, 194 F.3d 279 (1st Cir. 1999); <u>Sciglitano v. Holmes</u>, 2000 WL 675696 (E.D. Pa.), or to the authority an order to show cause (the predecessor of the notice of intent) conferred to arrest an alien, <u>Canela v. United States Dep't of Justice</u>, 64 F. Supp. 2d 456 (E.D. Pa. 1999); <u>Mercado-Amador v. Reno</u>, 47 F. Supp. 2d 1219, 1224 (D. Or. 1999), or both.  <u>See</u> <u>Bury v. Reno</u>, 101 F. Supp.2d 296, 300

9

(E.D. Pa. 2000).  Under these standards, the courts have decided
that the INS's service of a order to show cause commenced the
proceedings so that the service of such an order on the alien
before passage of the AEDPA entitled the alien to seek a section
212(c) waiver.

       The difficulty for Pri-Har is that in all of these cases
the INS had issued an order to show cause before passage of the
AEDPA.   In his case, on the other hand, the INS had only issued a
detainer before then, and he was not served with another INS
document until the issuance of the Notice of Intent on May 8,
2000, after enactment of the AEDPA and the effective date of the
IIRIRA.

       We have located only one case that dealt with a
detainer, Alanis-Bustamante v. Reno, 201 F.3d 1303, 1310 (11th
Cir. 2000).   However, there the INS had also served an order to
show cause and the court decided that together the detainer and
the order had commenced proceedings before the AEDPA.   It found it
unnecessary to decide if the order alone would have had that
effect.

       After review of the parties' arguments, we agree with
the Respondents that the detainer is not sufficient by itself to
establish that removal or deportation proceedings had commenced at
the time it was filed.   We do not believe that Pri-Har could have
reasonably relied on the detainer alone to expect that INS
proceedings had commenced against him.   In connection with any

10

potential proceedings, the detainer merely informed the prison that the INS was investigating Pri-Har to see if he would be deported.  An investigation does not commence proceedings, and we reject Petitioner's position that the detainer revealed the INS's intent to remove him from the United States.  The detainer's language can be contrasted with the Notice of Intent which informed Pri-Har that the INS had indeed determined that he was removable as an aggravated felon, that it was going to remove him from the United States and that he was being given an opportunity to respond.

We acknowledge that this detainer did more than just notify the prison that an investigation had started.  It also directed prison officials to send Pri-Har to INS custody at the end of his federal sentence.  This may have placed him in INS custody for the purpose of filing a habeas petition, see Roldan v. Racette, 984 F.2d 85, 88 (2d Cir. 1993), but it has no bearing on the separate issue of when INS proceedings commenced.[7]  We therefore conclude that section 212(c) waiver is unavailable to Petitioner.[8]

---

[7]Sometimes, an INS detainer will simply ask that the prison notify the agency a reasonable period of time before the alien's release from his sentence so the INS can take custody.  Id.  See also Garcia v. Taylor, 40 F.3d 299 (9th Cir. 1994), cited by Respondents.

[8]Petitioner has also argued that the INS should not have delayed his removal proceedings until he became ineligible for relief under the old law.  We reject this contention because the INS has the discretion to decide when it will institute

11

B.   <u>Retroactivity of IIRIRA Sections 304(b)</u>
     <u>and 348(a) as Applied to Petitioner</u>.

Petitioner argues that IIRIRA sections 304(b) and 348(a) are impermissibly retroactive as applied to him because his conviction preceded IIRIRA.   As noted, section 304(b) repealed section 212(c) in its entirety, and section 348(a) amended section 212(h).

In <u>Steele v. Blackman</u>, 236 F.3d 130 (3d Cir. 2001), the Third Circuit rejected Petitioner's retroactivity argument as it related to IIRIRA's repeal of section 212(c) for an immigrant covered by the so-called permanent rules.[9]  It relied on its decision in <u>DeSousa</u>, <u>supra</u>, 190 F.3d at 187, which held that AEDPA's amendment of section 212(c) was not impermissibly retroactive.   The <u>Steele</u> court did not find this fact distinguishable, stating that IIRIRA was motivated by the same congressional concerns as AEDPA, and therefore, Steele was not eligible for a section 212(c) waiver.   <u>Steele</u>, 236 F.3d at 134.

Pri-Har's situation is indistinguishable from Steele's. As with Steele, Pri-Har's conviction leading to removal

_____

proceedings against an alien.   <u>See</u> <u>Sousa v. Reno</u>, 135 F. Supp. 2d 75, 86 (D. Mass. 2001)(citing <u>Costa v. INS</u>, 233 F.3d 31 (1st Cir. 2000)).   <u>See</u> <u>also</u> <u>Pinho v. INS</u>, ___ F.3d ___, 2001 WL 487907, at *4-5 (3d Cir. 2001).

[9]The permanent rules, INS rules governing removal of an alien, cover aliens placed in removal proceedings after April 1, 1997, IIRIRA's effective date.   <u>See</u> <u>Sandoval</u>, <u>supra</u>, 166 F.3d at 229.

12

proceedings occurred before the 1996 amendments, the removal proceedings commenced after the passage of IIRIRA, and the permanent rules of IIRIRA are applicable. Thus, DeSousa and Steele are controlling, and IIRIRA's repeal of section 212(c) is not impermissibly retroactive as applied to Pri-Har.

We note, in any event, it does not appear that Pri-Har could invoke now-repealed section 212(c). As the section read at the time of its repeal, an alien serving a sentence of more than five years was not eligible for relief. Pri-Har's sentence was fourteen years.

C. <u>Section 212(h) and Retroactivity</u>.

Petitioner's next argument is that the amendment to 8 U.S.C. § 1182(h), INA § 212(h), by IIRIRA § 348(a) is impermissibly retroactive as applied to him. Taking the view that section 348(a) amended section 212(h) to preclude discretionary relief for "aggravated felons like Pri-har," (response at pp. 5 and 7), Respondents argue that the amendment is not impermissibly retroactive as to Pri-Har because section 348(b) specifically provides that "the amendment made by subsection (a) shall be effective on the date of the enactment of this Act and shall apply in the case of any alien who is in exclusion or deportation proceedings as of such date unless a final administrative order in such proceedings has been entered as of such date." IIRIRA § 348(b), 110 Stat. at 3009-639.

13

At the outset, the argument over retroactivity does not appear to be relevant to Pri-Har because he was never a permanent resident alien. Contrary to Respondents' position that it applies to any alien who has committed an aggravated felony, IIRIRA section 348(a)'s amendment to section 212(h) applies only to aliens who were "previously . . . admitted to the United States as an alien lawfully admitted." See also Catney v. INS, 178 F.3d 193 (3d Cir. 1999)("As a PRA [permanent resident alien] who has committed an aggravated felony since his lawful admission to this country, Catney is covered by the [amendment] and is ineligible for relief by the terms of section 212(h)."); Moore v. Ashcroft, ___ F.3d ___, ___, 2001 WL 505732, at *4 (11th Cir. 2001)("under the plain language of the [amendment] a lawful permanent resident convicted of an aggravated felony cannot obtain discretionary relief . . . while an alien who enters this country illegally and then commits an aggravated felony would at least theoretically be eligible for the relief"). Thus, the amendment should not be a bar to Pri-Har's request for relief under section 212(h) and to the extent the INS denied relief based on the amendment, we will require it to consider Pri-Har's request for a section 212(h) waiver.[10]

_____

[10]We note here that while Pri-Har's petition claims that the INS denied relief under section 212(h), there is no mention in the record of such a request or its denial; the deciding service officer dealt only with the request for a section 212(c) waiver. However, since Respondents accept Petitioner's averment that a section 212(h) waiver was sought and denied, we will also.

14

As to the retroactivity argument itself, it has no merit. In assessing the retroactivity of a statute, we first look to whether Congress has stated its intention as to the statute's "temporal reach." DeSousa, supra, 190 F.3d at 186 (citing Landgraf v. USI Film Prods., 511 U.S. 244, 114 S. Ct. 1483, 128 L.Ed.2d 229 (1994)). If so, then we simply enforce the statute in accord with Congress's intent. Id. Here, we have an unequivocal statement of Congress's intent. As noted, the amendment itself provides that it will apply to cases pending on its enactment. Thus, IIRIRA section 348(a) is not impermissibly retroactive. Id.; Catney, supra, 178 F.3d at 193 n.5 (noting that section 348(a) clearly applies to pending cases by virtue of section 348(b)); Pinho v. INS, ___ F.3d ___, 2001 WL 487907 (3d Cir. 2001). Thus, Pri-Har's retroactivity argument has no merit.

We will issue an appropriate order.


William W. Caldwell
United States District Judge

Date:  June 5, 2001

15

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MENACHEM PRI-HAR,                          :
      Petitioner

                           :

      vs.                              :     CIVIL ACTION NO. 1:CV-00-1635

JANET RENO, Attorney General              :
of the United States,
CHARLES W. ZEMSKI,                         :     **FILED**
Acting District Director,                        HARRISBURG, PA
      Respondents                         :
                                 JUN 05 2001

                                 MARY E. D'ANDREA, CLERK
              O R D E R         Per_____
                                      Deputy Clerk

      AND NOW, this 5th day of June, 2001, upon consideration of the habeas corpus petition, filed September 14, 2000, it is Ordered that:

      1.  The petition is denied except that the INS shall entertain a request by Petitioner for a waiver of ineligibility or admission under 8 U.S.C. § 1182(h), INA § 212(h).

      2.  Petitioner shall file such a request within thirty days of the date of this order. It shall supersede any other such request already made by Petitioner.

      3.  The Clerk of Court shall close this file.

                             William W. Caldwell
                              United States District Judge

Exh B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MENACHEM PRI-HAR,                          :
            Petitioner

                                           :

            vs.                            :    CIVIL ACTION NO. 1:CV-00-1635

JANET RENO, Attorney General               :
of the United States,
CHARLES W. ZEMSKI,                         :
Acting District Director,
            Respondents                    :

**FILED**
**HARRISBURG, PA**

JUL 0 5 2001

MARY E. D'ANDREA, CLERK
PER _____
        DEPUTY CLERK

O R D E R

            AND NOW, this 5th day of July, 2001, upon consideration

of Petitioner's motion (doc. 12) to extend the time to file an

application for a section 212(h) waiver, it is ordered that the

thirty-day deadline is vacated and that Petitioner shall not be

subject to any deadline by this court for seeking such a waiver.

_____
William W. Caldwell
United States District Judge

Cxh C

**MENACHEM  PRI-HAR**
**34446-054**
**McRae C.F.**
**1000 Jim Hammock Dr.**
**McRae, GA 31055**

July 21, 2003

Charles W. Zemski, District Director
Immigration and Naturalization Service          <u>Certified Mail</u>
1600 Callowhill Street                           Return Receipt Requested
Philadelphia, PA  19130

RE:  **Pri -Har v. Zemski et al.**
**Civil Action No. 1: CV - 00 - 1635 (M.D. Pa.)**

Dear Mr.  Zemski:

Pursuant to the orders of the United States District Court for the Middle District of
Pennsylvania (Caldwell, J. ) in the above - referenced action, enclosed please find my
application for INA § 212 (h) waiver in the form of an affidavit accompanying with
four (4) exhibits.

Please confirm the receiving of the application and let me know when you expect
to render a decision on this matter.

Thank you for your attention to this matter.

Sincerely,

MENACHEM  PRI-HAR

Enclosures

c.  Martin C. Carlson (w/encl.)
United States Attorney
228 Walnut Street
Harrisburg, PA  17108

**MENACHEM  PRI-HAR**
**34446-054**
**McRae C.F.**
**1000 Jim Hammock Dr.**
**McRae, GA 31055**

July 21, 2003

Martin C. Carlson, U.S. Attorney
U.S. Attorney's office
228 Walnut Street
Harrisburg, PA  17108

<u>Certified Mail</u>
Return Receipt Requested

RE:  Pri -Har v. Zemski et al.
<u>Civil Action No. 1: CV - 00 - 1635 (M.D. Pa.)</u>

Dear Mr.  Carlson:

    Pursuant to the orders of Judge Caldwell in the above - referenced action, enclosed please find a copy of application to the INS under INA § 212 (h).

    Please see that the INS will assess the application on its merits.

    Thank you.

Sincerely,

MENACHEM  PRI-HAR

Enclosure

```
----------------------------------------------
In the matter of              *
                              *
MENACHEM PRI-HAR,             *
                Applicant.    *        File No.:  A77627738
                              *
----------------------------------------------*
```

## AFFIDAVIT IN SUPPORT FOR A WAIVER
## OF INELIGIBILITY
## OR ADMISSION UNDER INA § 212 (h)

MENACHEM PRI-HAR, being under penalty of perjury in compliance with 28

U.S.C. § 1746, hereby deposes and says:

(1)  I am the applicant in the above - referenced case.

(2)  I submit this affidavit pursuant to the orders of the United States District

Court for the Middle District of Pennsylvania in the case entitled <u>Menachem Pri-Har v.</u>

<u>Janet Reno and Charles W. Zemski</u>, Civil Action No. 1: CV-00-1635, which were filed

on June 5, and July 5, 2001. (The copy of the orders are attached herewith as

Exhibit "1" ).

I.                                    <u>BACKGROUND</u>

(3)  I am a native and citizen of the State of Israel.

(4)  Since the end of 1983, numerous times I had been lawfully admitted to the

United States under the auspices of a business visa for exporting and importing

agricultural products.  My last entry to the country was on March 27, 1993.

(5)  On March 29, 1993, I was arrested by the Federal Bureau of Investigation.

Following a jury trial,  I was convicted on a 24 count indictment charging conspiracy to

defraud and wire fraud by way of inaccurate representation to banks and misstatement

on application for subsidies to the United States Department of Agriculture.  As a

consequence, I was sentenced, *inter alia*, to 14 years of imprisonment.  See <u>Pri-Har v.</u>

<u>United States</u>, 83 F. Supp. 2nd 393, 395 - 96 (S.D. N.Y.  2000).

(6)  My conviction and sentence had caused the Immigration and Naturalization

Service ("INS") to issue a final administrative removal order, dated August 10, 2000,

pursuant to its authority under § 238 (b) of the Immigration and Nationality Act ("INA").

(The final administrative removal order is attached herewith as Exibit "2").

(7)  Following appeal on the removal order, the United States District Court for

the Middle District of Pennsylvania (William W. Caldwell, J.), had issued a

memorandum and orders for which the INS was directed to entertain my request for a

waiver of ineligibility or admission under INA § 212 (h).  (See Ex. 1).

(8)  The INS did not appeal these orders.

## II.       THE LEGAL STANDARD FOR WAIVER UNDER INA § 212 (h)[1]

(9)  The statute formulated a standard by which a deportee must shoulder in

order to obtain a §212 (h) waiver.  The terms are :  (a) the alien is the spouse, parent or

child of a U.S. citizen or lawful permanent resident;  (b) the deportation would result in

extreme hardship to the U.S. citizen or lawful permanent resident spouse, parent or

---

1.  INA § 212(h) was codified under 8 U.S.C. § 1182 (h).

2

child;  (c) the alien's admission would not be contrary to the national welfare, safety or security of the United States; and (d) the Attorney General exercises his discretion in the alien's favor.  8 U.S.C. § 1182 (h).  The Attorney General prong does not saddle an alien with the need to "prove that he actually would have been granted such relief." Instead, " he must make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor."  United States v. Arce-Hernandez, 163 F. 3d 559, 563, (9th Cir. 1998).

## III.        THE FACTS TO WHICH § 212 (h) WAIVER ARE APPLIED

### A.                          *Family Ties to a U.S. Citizen*

(10)  On April 21, 1992, my son Dror  B. Pri-Har (hereinafter "Dror"), was born at the Jewish Hospital in Great Neck, New York.  (A copy of Dror's Certificate of Birth is attached herewith as Exibit "3").

(11)  Since his birth, Dror is rearing in the United States.

(12)  I therefore meet the threshold requirement of § 212 (h), as being a parent of American citizen.

### B.                  *A Deportation Would Result in Extreme Hardship*

(13)  "Extreme hardship" defined as when " there is great actual or prospective injury or extreme impact on the citizen family member, beyond the common results of deportation."  Arce - Hernandez, 163 F. 3d at 564 (quotation and citation marks omitted).

(14)  Barbara A. Breest (hereinafter "Barbara") is the mother of Dror.

3

(15)  Barbara and myself were scheduled to be married at the beginning of April 1993, but due to my arrest the wedding ceremony was canceled.

(16)  Until the summer of 1995 Barbara had frequently brought our son, Dror, to visit me at the federal prisons.

(17)  Despite my imprisonment, until the summer of 1995 I provided Barbara and Dror with all of their financial needs.

(18)  The summer of 1995 brought an acute change of Barbara's heart toward me.  Following trips to Los Angeles, California, she decided to relocate her and Dror's residence place from West Islip, New York, into the "Hollywood" city.  In doing so, she has foreclosed visits and communications between Dror and myself.

(19)  Since the summer of 1995, when Dror was just three (3) years old, I have not seen or heard from him.  All my letters and gifts, which were sent to Dror at the address of Barbara's parents, (the only address known to me), have not been answered or acknowledged by him.

(20)  I attempted to cure this bleak situation with a plea to the Supreme Court of the State of New York, (index No. 24785 / 95), but my physical internment in a federal prison had foreclosed intervention by the court.

(21)  The combination of Barbara's unjust acrimony toward me and my impending deportation from the United States will cause Dror's adolescence in a fatherlessness environment.

(22)  During the years of 2001 and 2002, Barbara had send me a few letters indicating her financial strain and requesting to provide her child support.  I agreed to pay *all* of Dror's expenses as long as she allow his contacts with me.  With no

4

explanation, Barbara refused to let relationship between Dror and myself even at the cost of subjecting Dror to indigent conditions of living.

(23)  The dire effects on a child who rearing without a father descibed by Ken Canfield, a Philosophy Doctor, in his book " The Heart Of A Father ".  Dr. Canfield cited injuries of (a) likelihood to commit crimes and engagement in substance abuse; (b) poor schooling; (c) indigent life; and (d) pre-mature sexual activity.  Each of these lurid factors, undoubtedly in anyone's book, is repugnant to the conscience of mankind as to be ranked as fundamental impact on Dror's life.  (The relevant excerts from the book are attached herewith as Exhibit "4").

(24)  I am a pilot who served in the Israeli Air Force, and I have the fiscal means to provide Dror with his mundane needs and affluent conditions of living.

(25)  I believe that Dror will significantly benefit from my cachet traits to his life, and my influence on him will protect him from being subjected to lasting, prospective injuries from the growing without his father.

(26)  A § 212 (h) waiver will permits my access to the Family Court where I be able to obtain, at a minimum, visiting of Dror and providing him with all of his needed financial support.  In doing so, Dror will be saved from extream hardship(s) in his life.[2]

---

2.  I assume that no court will agree with Barbara's methods of depriving a son from his father on the basis of her change of heart.

**C.**    ***A Waiver of Ineligibility or Admission Under  INA § 212 (h)***
***Will Not Effect the National Welfare, Safety or Security***
***of the United States***

(27)  The security tenet of the United States does not view Israeli citizens

as being a threat to its safety nor that my conviction had any effect on the safety or

security of the United States.

(28)  The national welfare of the country can only be benefited from the

granting of § 212 (h) waiver, because I will carry all of Dror's needs and thus

preventing unneccessary cost to the U.S. welfare services on any of his

prospective injuries, which might be occurred if Dror reared in a fatherlessness

home.

(29)  Therefore, my admission to the United States in order to bond

relationship of father and son, whom have not seen or been in touch since

the son was three years old, thanks to his mother unjust vexation, does not

subject the country to any precarious harm.

**D.**    ***The Attorney General Should Side With a § 212 (h) Waiver***

(30)  The only court who has jurisdiction and power to cease Barbara's

conduct of curbing relationship between Dror and me, is the Family Court in

the United States.  The deportation will foreclose my access to this court and

thus Dror may never know his father.

(31)  At issue here is Barbara's conduct of depriving Dror from his father

and subjecting him to rearing in a fatherlessness home.  I believe that such

conduct offends core principle of human race, and thus, the Attorney

General should permit the § 212 (h) waiver in order to stop this evil act and

6

allow me to develope bond with Dror.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that to my knowledge the foregoing is true and correct.

Dated:  McRae, Georgia
        July 21, 2003

MENACHEM PRI-HAR
#34446-054
McRae  C.F.
1000 Jim Hammock Drive
McRae, GA  31055

EX. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MENACHEM PRI-HAR,                    :
       Petitioner

                          :

       vs.                          :    CIVIL ACTION NO. 1:CV-00-1635

JANET RENO, Attorney General        :
of the United States,
CHARLES W. ZEMSKI,                   :
Acting District Director,
       Respondents                  :

**FILED**
**HARRISBURG, PA**

JUN 05 2001

MARY E. D'ANDREA, CLERK
Per _____
              **Deputy Clerk**

O R D E R

       AND NOW, this 5th day of June, 2001, upon consideration
of the habeas corpus petition, filed September 14, 2000, it is
Ordered that:

       1.  The petition is denied except that the
INS shall entertain a request by Petitioner
for a waiver of ineligibility or admission
under 8 U.S.C. § 1182(h), INA § 212(h).

       2.  Petitioner shall file such a request
within thirty days of the date of this order.
It shall supersede any other such request
already made by Petitioner.

       3.  The Clerk of Court shall close this
file.

_William W. Caldwell_
William W. Caldwell
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MENACHEM PRI-HAR,                    :
      Petitioner

                           :

      vs.                            :    CIVIL ACTION NO. 1:CV-00-1635

JANET RENO, Attorney General         :
of the United States,
CHARLES W. ZEMSKI,                   :
Acting District Director,
         Respondents                 :

FILED
HARRISBURG, PA

JUL 0 5 2001

MARY E. D'ANDREA, CLERK
PER _____
DEPUTY CLERK

O R D E R

AND NOW, this 5th day of July, 2001, upon consideration of Petitioner's motion (doc. 12) to extend the time to file an application for a section 212(h) waiver, it is ordered that the thirty-day deadline is vacated and that Petitioner shall not be subject to any deadline by this court for seeking such a waiver.

William W. Caldwell
United States District Judge

U. S. Department of Justice
Immigration and Naturalization Service

**EX. 2**

**Final Administrative Removal Order**

## FINAL ADMINISTRATIVE REMOVAL ORDER
## UNDER SECTION 238(b) OF THE
## IMMIGRATION AND NATIONALITY ACT

BOP NO: 34446-054
FILE NO: A77 627 738
DATE: 8-10-00

To:       PRI-HAR, Menachem
Address:  LSCI ALLENWOOD, Allenwood, PA 17887
          (Number, street, city, state, and ZIP code)
Telephone:   N/A
          (area code and phone number)

### ORDER

Based upon the allegations set forth in the Notice of Intent to Issue a Final Administrative Removal Order and evidence contained in the administrative record, I, the undersigned Deciding Service Officer of the Immigration and Naturalization Service, make the following findings of fact and conclusions of law. I find that you are not a citizen or national of the United States and that you were not lawfully admitted for permanent residence. I further find that you have a final conviction of an aggravated felony as defined in section 101(a)(43)(**M&U**) of the Act, 8 U.S.C. 1101(a)(43) and are ineligible for any relief from removal that the Attorney General may grant in an exercise of discretion. I further find that the administrative record established by clear, convincing, and unequivocal evidence that you are deportable as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. 1227(a)(2)(A)(iii). By the power and authority vested in the Attorney General and in me as the Attorney General's delegate under the laws of the United States, I find you deportable as charged, and order that you be removed from the United States to

_____ **Israel** _____ or to any alternate country prescribed by section 241 of the Act.

_____
(Signature of Authorized INS Official)

_____ District Director
(Title of Official)

_____ Philadelphia, PA          8-10-00
(Date and office location)

Petition for review:  [ ]  Waived by respondent
                      [ ]  Reserved by respondent

---

### Certificate of Service

I served this **FINAL ADMINISTRATIVE REMOVAL ORDER** upon the above-named individual. *P.O. Box 1000*

8/16/00     ALLENWOOD, PA.          MAIL SERVICE   *White Deer, PA 17887*
          (Date, time, place and manner of service)

_____
(Signature and title of officer)

Form I-851A (Rev 4-1-97)N

**Attachment to Final Administrative Removal Order (I-851A)**

**RE: Menachem PRI-HAR, A77 627 738**

I have considered all the information related to the Administrative Removal proceedings in your case. You have submitted a written response to the Notice of Intent to Issue a Final Administrative Removal Order on July 29, 1999. Your were granted a final 30 days extension in order to submit your response. This extension expired on June 24, 2000. Your request for another extension to submit a response is denied.

I find that your alienage, conviction of an aggravated felony, and deportability are supported by clear convincing and unequivocal evidence. I also find that you are not a lawful permanent resident of the United States.

You have requested that you be allowed to pursue a waiver of inadmissibility under section 212(c) of the INA. However, you are statutorily ineligible for such relief. Section 212(c) of the INA was repealed by section 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-207, 110 Stat. 3009 (effective April 1, 1997)(hereinafter "IIRIRA). This amendment to the INA applies to individuals placed in proceedings after April 1, 1997, the effective date of IIRIRA. Inasmuch as the instant proceedings were commenced against you on May 11, 2000, you are precluded from applying for relief under former section 212(c) of the INA as a matter of law.

Therefore, the decision on the Administrative Removal Order is final.

DOCUMENT NO. 1-11/28/98





This is a certification of name and birth facts on file in the Bureau of Vital Records, Department of Health, City of New York.

# THE CITY OF NEW YORK

## DEPARTMENT OF HEALTH
### VITAL RECORDS

## CERTIFICATION OF BIRTH

# Ex. 3

**CERTIFICATE NO.**  156-92-038931

**DATE ISSUED**  10-02-95

| | |
|---|---|
| DATE OF BIRTH | APRIL 21, 1992 |
| BOROUGH | QUEENS |
| | **DATE FILED** 04-24-92 |
| NAME | DROR BREEST FRI-HAR *** |
| SEX | MALE |
| MOTHER'S MAIDEN NAME | BARBARA ANN BREEST |
| FATHER'S NAME | MENACHEM FRI-HAR |

*Earlene Price*

EARLENE PRICE
CITY REGISTRAR

Do not accept this transcript unless it bears the raised seal of the Department of Health. The reproduction or alteration of this certification is prohibited by

Ex. 4

# THE HEART OF A FATHER

*How Dads Can*
*Shape the*
*Destiny of America*

KEN CANFIELD, Ph.D.

NORTHFIELD PUBLISHING
CHICAGO

leave at 5:00 or 5:30 in the morning, and often don't get home until 7:30, just in time to watch their children go to bed.

Certainly financial pressures have contributed to the decline in fathering. Those financial pressures cause some men to work longer and harder for hopes of advancement and pay raises. A rise in addictions and sexual irresponsibility are also factors. Yet, I believe there to be deeper reasons for disintegrating fatherhood:

• A loss of vision for the future. For years, our society was focused on our posterity, but no longer. For many adults, happiness has become the all-consuming goal. That's putting our personal preferences ahead of our children's needs.

• A loss of priorities. Men especially are prone to finding their identity through their work rather than their family, and they confuse achievement, salary, and title with being better as a person.

• A loss of sense of duty and commitment. Sacrifice is no longer applauded—who does what is right anymore simply because it is right?

• A loss of community. Individualism has run amok. Involved fatherhood has become a private matter, and fathers rarely communicate with other dads about fathering.

## WHEN FATHERS DISAPPEAR

Henri Nouwen, a parish priest and author, accurately predicted in the seventies that the coming generation would be known by its sense of inwardness, convulsiveness, and fatherlessness.[9] Consider the legacy of the disappearing father. Fatherlessness, either through physical or emotional absence, has had the following effects:

• Fatherless children are more likely to commit crimes and engage in substance abuse. A 1994 report from the Wisconsin Department of Health and Social Services found just 12 percent of the delinquents in state custody were from a two-parent family. A 1980 study of female delinquents in the California Youth Authority found just 7 percent came from intact families.[10]

• On average, fatherless children score lower on tests and have lower grade point averages. Family scholar Barbara Dafoe Whitehead "Even after controlling for race, income and religion, scholars find significant differences in educational attainment between children who grow up in intact families and children who do not."[11]

---

In the quiet hours of the night, when I add up the accomplishments of my life in which I take justifiable pride—a dozen books, thousands of lectures and seminars, a farm built by hand, a prize here, an honor there—I know that three that rank above all the others are named Lael, Gifford, and Jessamyn [his children]. In the degree to which I have loved, nurtured, and enjoyed them, I honor myself. In the degree to which I have injured them by being unavailable to them because of my obsessive preoccupation with myself or my profession, I have failed as a father and as a man.[3]

## [Dis]integration of Fatherhood

For many dads, though, their father power has dwindled. Many [m]en have diminished or even lost their roles as influential fathers, some [by] choice. The number of children who live with their biological [fat]hers has dropped from 82.4 percent in 1960 to 61.7 percent in [19]90.[4] But even this figure does not get at the extent of the decay. It is [es]timated that, with the explosion of out-of-wedlock births and the [hi]gh level of divorces—in which the mother typically gains physical [cus]tody of the children—up to 60 percent of today's children will spend [at] least part of their childhood living apart from their biological father.[5]

But there is more than one way for a father to be absent from his [fam]ily. Being fatherless does not just mean losing a father through [de]ath, divorce, or illegitimate birth. In a 1994 survey of more than [5,]500 adult men, more than 50 percent said their fathers were emotion[all]y absent for them growing up.[6] That may help explain why in anoth[er] survey only 34 percent of adult males could say that they considered [th]eir own father to be a role model.[7]

Ward and June Cleaver and their ideal neighborhood of the fifties [se]em to be a nostalgic relic. Dramatic changes in lifestyle and culture [ha]ve revolutionized the structure of the traditional American family. [Ac]cording to one expert, more than 40 percent of American adults have [no] weekly contact with children.[8]

In a span of a few weeks, as I was speaking in New York City and [the]n in southern California, I again came face-to-face with the life sto[rie]s behind the statistics. Only a few of the men I met were still married [and] living with their children's mother. One man told me a typical sto[ry]—his wife had left him and moved with their three children to Sacra[men]to; he has since remarried a woman who has three children of her [ow]n. "I feel like I'm fathering my stepchildren but not my own chil[dren]..."

Many of them commute an hour or more every day to work. Some

and re-crossed her legs; Jerry offered to get coffee.

About eight minutes later, Bob shuffled back into the room. "Where were we?" he asked. Everyone looked at him, still perplexed. "OK," he said, "I'm sorry I left, but I couldn't wait. My kids are down at the day care today, and I just had to have a 'kid fix.'"

Dad, I'm warning you: *Fatherhood can be addicting.* Its simple joys can become compelling. Maybe for you it will start with bouts of all-star wrestling when you get home from work, then maybe you'll find yourself sneaking hugs before dinner, or lingering longer than necessary by their beds at night, or uttering words of encouragement when they leave for school. Finally, you'll be looking to score a fix at any moment of the day.

Then, if worse comes to worse, you'll become a pusher. Like me.

More often, though, men who had an incomplete model have a sense of the vacuum, and they have a desire to give something better to their children. Dads who are overcomers want to break the unhealthy cycles they've inherited from their fathers. Some do so by overcompensating. "I'm going to be the father I never had," they say. Yet many who made that declaration later admit, "You know, when my first child was born, I told myself 'I am going to be the father I never had,' but now I find myself doing the very things I disliked so much in my dad." Our fathers are our default models: If we reject them as models but fail to replace them with new ones, then we end up using them as our models anyway, in spite of ourselves.

Unfortunately, much of what is being written by experts, sociologists, and journalists about fathering doesn't help. In addition to "deadbeat dads," other models rise up, such as those from pathology, via such thinkers as Lewis Yablonsky and Robert Meister:[19] abusive dads, buddy dads, distant dads, critical dads, seductive dads, idealized dads, egocentric dads, psychopathic dads, and more. These types, which are considered vitally important in research, often make you feel like a college freshman in a psychology course: Nothing in the textbook seems to fascinate us as much as the chapters on abnormal behaviors.

But we're not abnormal fathers. We're just typical Joes trying to win with our kids. We need a simplified plan for being an effective father—a simple plan that makes sense and that considers social research.

## DISCOVERING THE JOY OF FATHERING

The heart of the father needs to beat for his children. Ultimately, it's not a matter of what a father *does*—although that is important, and we'll look at research that shows what behaviors help our children. But my overriding purpose is for you to discover the immense joy of fathering. I wish for each of us to be more like Bob, a father and friend of mine. One day at work during an intense meeting, Bob's eyes started wandering. "Bob," someone said, "did you hear me?" "Oh sure," Bob said, and his focus snapped back to the person's face. He leaned forward to study some papers and the meeting resumed in full force.

But only a few seconds later, in the middle of someone's comment, Bob waved his hand apologetically. "I'm really sorry," he said, "but I just can't concentrate. Hold your thought; I'll be back in a minute." Out the door he went.

In his wake, he left bewilderment. *Where did he go?* the staff wondered. *What was so important that it couldn't wait twenty minutes?* And, without a clue, they waited. Betty twiddled her thumbs, Helen crossed

RECEIVED
JUL-31-2003

**U.S. Department of Justice**

*Thomas A. Marino*
*United States Attorney*
*Middle District of Pennsylvania*

(4h)



| | | |
|---|---|---|
| *William J. Nealon Federal Building* | *Harrisburg Federal Building and* | *Herman T. Schneebeli Federal Building* |
| *Suite 311* | *Courthouse, Suite 220* | *Suite 316* |
| *235 N. Washington Avenue* | *228 Walnut Street* | *240 West Third Street* |
| *P.O. Box 309* | *P.O. Box 11754* | *Williamsport, PA 17701-6465* |
| *Scranton, PA 18501-0309* | *Harrisburg, PA 17108-1754* | *(570) 326-1935* |
| *(570) 348-2800* | *(717) 221-4482* | *FAX (570) 326-7916* |
| *FAX (570) 348-2816/348-2830* | *FAX (717) 221-4582/221-2246* | |

*Please respond to:*  Harrisburg

July 28, 2003

Menachem Pri-Har
34446-054
McRae C.F.
1000 Jim Hammock Drive
McRae, Georgia 31055

**RE:** <u>**Menachem Pri-Har v. Janet Reno, Attorney General, et. al.**</u>; **Civil Action No. 1:CV-00-1635 (M.D. Pa).**

Mr. Pri-Har:

      The United States Attorney's Office is in receipt of your "Affidavit in Support for a Waiver of Ineligibility or Admission under INA § 212(h)." It appears that your petition for writ of habeas corpus was completed in June of 2001. I am uncertain what caused your delay in requesting the waiver two years after the district court's decision, but if still eligible, you must comply with the filing requirements. Your submission did not include a copy of the 212(h) waiver application form, a copy of the filing fee receipt. Please note, that in order to apply for a waiver of inadmissibility under INA § 212(h), you are required to file a Form I-601 application. In addition, you are also required to pay the filing fee. The application should be filed in the immigration court having jurisdiction over your case.

      Sincerely,

      THOMAS A. MARINO
      United States Attorney

By: *Daryl F. Bloom*

      DARYL F. BLOOM
      Assistant United States Attorney

**MENACHEM  PRI-HAR**
**#34446-054**
**McRae C.F.**
**1000 Jim Hammock Dr.**
**McRae, GA  31055**

August 4, 2003

AUSA Daryl L. Bloom
U.S. Attorney's Office
228 Walnut Street
Harrisburg, PA  17108-1754

RE:  PRI-HAR  v.  RENO et al.
<u>Civil No.  1: CV - 00 - 1635 (M.D. Pa)</u>

Dear Mr.  Bloom:

Thank you for your prompt response - letter, dated July 28, 2003, in which you indicated that my application under INA § 212 (h) lacks the requisite form and that the corrected application should be filed in an immigration court, whom which it has jurisdiction to decide my case.

My past dealing with with the INS reveals that the agency does not receptive to applicants, as myself, *who* request certain form or who file *pro se* applications in the immigration court.  Any attempt to ask the INS, via correspondence, for a Form I - 601 application or to file the application in the immigration court is bound to be mired in a morass of bureaucracy.

Nor that I believe that the immigration court will entertain my application, because the deportation order was achieved through the removal procedures authorized by INA § 238 (b), in which the immigration court had no involvement.  Under the terms of Title 8 C.F.R. § 3.14 (a), the court has no jurisdiction over my case unless the agency initiates the action.

I believe that prudent compliance with Judge Caldwell's order in the above-referenced action invite your subservient, as a liaison between the INS and myself, by furnishing me with the required form and assuring that the INS will act on the application promptly.

As for the district of jurisdiction over the application, I believe that the INS office and its court in Philadelphia has the proper jurisdiction because this office had issued the order of deportation, and , because Judge Caldwell's order was directed to Charles W. Zemski, a district director at the INS` Philadelphia office. *See 8 C.F.R. § 3.14 (a).*

Finally, I noted your comment on the delay in filing of the 212 (h) application.  As you may know, Judge Caldwell's order of July 5, 2001, did not confine the application to a schedule deadline, and the delay was caused from the long process of collecting necessary materials under the strain of internment in the governmernt's prison.

I hope that you will participate in building an efficient process for the instant § 212 (h) application.

Thank you for your consideration of this request.


Sincerely,


MENACHEM  PRI-HAR

**MENACHEM  PRI-HAR**
**#34446-054**
**McRae C.F.**
**1000 Jim Hammock Dr.**
**McRae, GA  31055**

September 10, 2003

AUSA Daryl F. Bloom
United States Attorney's Office
228 Walnut Street
Harrisburg, Pennsylvania  17108-1754

<u>Certified Mail</u>
Return Receipt Requested

RE:    **Pri-Har  v.  Reno et al.**
       <u>**Action No.  1: CV-00-1635 (M.D. Pa)**</u>

Dear Mr. Bloom:

On August 4, 2003, I forwarded a letter requesting your assistance in executing the District Court's order in the above-referenced action.  As of today, however, I have not received your response.

I therefore enclosed herewith a copy of the said letter hopping to have your positive response promptly.  Also, please be advised that the INS has not responded to my § 212 (h) application or provided any necessary form for the application.

Thank you for your attention to this matter.

Sincerely,

MENACHEM  PRI-HAR

ENCLOSURE

**MENACHEM  PRI-HAR**
**#34446-054**
**McRae C.F.**
**1000 Jim Hammock Dr.**
**McRae, GA  31055**

September 10, 2003

Charles W. Zemski, District Director
Immigration and Naturalization Service
1600 Callowhill Street                           <u>Certified Mail</u>
Philadelphia, PA  19130                          Return Receipt Requested

RE:    **Pri-Har  v.  Zemski et al.**
       <u>**Action No.  1: CV-00-1635 (M.D. Pa)**</u>

Dear Mr.  Zemski:

On July 28, 2003, you received my application under INA § 212 (h) pursuant to
the District Court's order in the above-referenced action.  As of today, however, I have
yet to receive your acknowledgement of the application.

Please let me know if your office has processed the application and if there is a
need for any further information.  In this regard, should you need any customary form,
please furnish me with the required one.

Thank you for your attention to this matter.

Sincerely,

MENACHEM  PRI-HAR

c.  AUSA Daryl F. Bloom
    U.S. Attorney's Office
    228 Walnut Street
    Harrisburg, PA  17108-1754

**U.S. Department of Justice**

**Thomas A. Marino**
*United States Attorney*
*Middle District of Pennsylvania*

RECEIVED
OCT-2-03

---

*William J. Nealon Federal Building*
*Suite 311*
*235 N. Washington Avenue*
*P.O. Box 309*
*Scranton, PA 18501-0309*
*(570) 348-2800*
*FAX (570) 348-2816/348-2830*

*Harrisburg Federal Building and*
*Courthouse, Suite 220*
*228 Walnut Street*
*P.O. Box 11754*
*Harrisburg, PA 17108-1754*
*(717) 221-4482*
*FAX (717) 221-4582/221-2246*

*Herman T. Schneebeli Federal Building*
*Suite 316*
*240 West Third Street*
*Williamsport, PA 17701-6465*
*(570) 326-1935*
*FAX (570) 326-7916*

*Please respond to:*  Harrisburg

September 29, 2003

Menachem Pri-Har
Inmate No. 34446-054
McRae Correctional Facility
1000 Jim Hammock Drive
McRae, Georgia 31055

**RE: <u>Pri-Har v. Reno, et al.</u>; Civil Action No. 1:CV-00-1635 (M.D. Pa.)**

Mr. Pri-Har:

I am writing in response to your letter, dated September 10, 2003, in which you attach a letter previously sent to this office that requested assistance in filing an application for a discretionary waiver of removal. The previous letter acknowledges our July 28, 2003 response. The July 28, 2003 letter sent to you by this office was meant to provide an instruction on how and where to file an application for a waiver of removal under section 212(h) of the Immigration and Nationality Act ("INA") in general terms, without considering the facts of your particular case.[1] The letter did not make a determination concerning your eligibility for such relief.

Although I have not reviewed your INS, now ICE, administrative file, you now state in your letter that you were placed in administrative removal proceedings under section 238(b) of the INA. If this is true, you are statutorily ineligible for a section 212(h) waiver. Section 238(b)(5) states: "[n]o alien described in this section <u>shall be eligible</u> for

---

[1] The file kept by this office in your case was closed on June 5, 2001 and archived.

any relief from removal that the Attorney General may grant in the Attorney General's discretion." (emphasis added). Section 212(h) is a discretionary form of relief. INA § 212(h). As such, if you are in administrative removal proceedings, you are statutorily ineligible for a section 212(h) waiver.

This determination is not inconsistent with the District Court's June 5, 2001 Memorandum and Order. The District Court's Memorandum states that "to the extent the INS denied relief based on the amendment [IIRIRA § 348(a)], we will require it to consider Pri-Har's request for a section 212(h) waiver." First, the then INS's decision does not appear to be based on the amendment to the statute. Second, the Order does not require the INS to conduct a hearing if you are otherwise ineligible for the relief. I should also note that you appear to be attempting to file the section 212(h) application (Form I-601) over two years after the District Court's decision.

Sincerely,

Thomas A. Marino
United States of America

Daryl F. Bloom
Assistant United States Attorney

DFB/me

**MENACHEM PRI-HAR**
**#34446-054**
**McRae C.F.**
**1000 Jim Hammock Dr.**
**McRae, GA  31055**

October 21, 2003

AUSA Daryl F. Bloom
U.S. Attorney's Office
228 Walnut Street
P.O. Box 11754
Harrisburg, PA  17108-1754

_____Certified Mail_____
Return Receipt Requested

RE:  Pri-Har v. Reno et al.
Action No. 1:CV-00-1635(M.D.Pa)

Dear Mr. Bloom:

Thank you for your letter dated September 29, 2003, in which you indicated your view that the INS does not require to entertain my request for an INA § 212(h) waiver, because I am "statutorily ineligible for a section 212(h) waiver."

Please note that a same argument presented by your colleague and rejected by the District Court, whom had ordered in unconditional terms that the INS "shall entertain" my request for a § 212(h) waiver. The Court further ordered that submission of the application would not be subjected to time limitations. Since the INS did not appeal these orders, they became to be the *law of the case*.

**PLEASE TAKE A NOTICE** that if the INS will not initiate a §212(h) proceeding within 30 days from the date of this letter, I will move with appropriate action to remedy its flouting on the orders of Judge Caldwell.

Sincerely,

MENACHEM  PRI-HAR

Exh E

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MENACHEM PRI-HAR,                )   CIVIL NO.  1:CV-00-1635
            Petitioner           )   (Caldwell, J.)
                                 )
            v.                   )
                                 )
JANET RENO, Attorney General     )
of the United States,            )
CHARLES W. ZEMSKI,               )        **FILED**
Acting District Director,        )       HARRISBURG
            Respondents          )
                                 )        JUN 2 5 2001

                                        MARY E. D'ANDREA, CLERK
                                        Per_____
                                               DEPUTY CLERK

RESPONDENTS' RESPONSE
TO PETITIONER'S MOTION TO AMEND ORDER

Petitioner has filed a motion requesting that the Court
amend its Order dated June 5, 2001 to permit him to extend by
five months the deadline by which he must file an application for
a § 212(h) waiver with the Immigration and Naturalization
Service.  Respondents take no position on whether Petitioner's
request is appropriately made in the context of a Rule 59(e)
motion, but notify the Court that they have no opposition to
Petitioner being allowed an additional five months to file a
§ 212(h) waiver.

                        Respectfully submitted,

                        MARTIN C. CARLSON
                        United States Attorney


                        DULCE DONOVAN
                        Assistant U.S. Attorney
                        Federal Building
                        228 Walnut Street
                        Post Office Box 11754
                        Harrisburg, PA 17108

Dated: June 25, 2001

## CERTIFICATE OF SERVICE

Petitioner, Menachem Pri-Har, hereby certifies under penalty of perjury, in compliance with 28 U.S.C. § 1746, that on December 1, 2003, I served a copy of the attached Motion for a Judgment Directing Specific Acts by placing said copy in a first class post-paid envelope addressed to:

> AUSA Daryl F. Bloom
> U.S. Attorney's Office
> P.O. Box 11754
> Harrisburg, PA  17108-1754

and by depositing it in the mailbox at McRae Correctional Facility.

Dated: McRae, Georgia
December 1, 2003

MENACHEM  PRI-HAR